UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**SONIA AMAYA,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civ. No. 19-00287 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Sonia Amaya, on behalf of her minor son, J.D., brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying child Supplemental Security Income ("SSI") benefits. For the reasons below, the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND**[1]

In April 2015, Ms. Amaya applied for child SSI for J.D., when he was 12 years old. (R. 141–48.) By the time of the ALJ hearing, he was a freshman in high school. (R. 49–50.) Since 2011, J.D. has been diagnosed with attention deficit hyperactivity disorder ("ADHD"). (R. 267–70.)[2] He was evaluated for special education and scored in the low-average range on IQ tests. (R. 152.) The

---

[1]     Citations to the record are abbreviated as follows:

    "DE _" = Docket entry in this case

    "R. _" = Administrative Record (DE 8) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 8 attachments)

    "Pl. Brf." = Amaya's Moving Brief (DE 13)

    "Def. Brf." = Commissioner's Brief (DE 18)

[2]     He later was also diagnosed with an adjustment disorder, resulting from family difficulties. (R. 298–99.)

school psychologist noted that he had difficulties with reading, writing, attention, and concentration. (R. 153.) One assessment revealed that his academic skills and his speed in completing academic tasks were in the low range, but his ability to apply those skills was within the low-average range. (R. 158.) The school found that he needed special education. (R. 157–58.) As he progressed to sixth grade, he continued to have those difficulties, and was functioning at a third-grade reading, math, and writing level. (R. 191, 276.) State agency psychological consultants opined that he had a limitation in acquiring and using information, but it was less than marked (discussed further *infra*) because he still had third-grade reading, math, and writing levels and his teacher had not noted any difficulties in this area. (R. 59.) A reevaluation in eighth grade showed that his reading and writing level had stayed the same, but he was performing close to grade level in mathematics. (R. 237.)

## II.   DECISION FOR REVIEW

### A. Child Disability Standards and this Court's Standard of Review

For a child under the age of 18 to be disabled and thus eligible for SSI, he[3] must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

> Regulations require a three-step analysis to determine whether a child is disabled: (1) that the child is not working; (2) that the child had a severe impairment or combination of impairments; and (3) that the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the Listings . . . . A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two domains of functioning or an extreme limitation in one domain. A child's functional limitations are considered in terms of six domains: (i) Acquiring and using

---

[3]   Because J.D. happens to be male, in this opinion I use the male pronoun when referring to a generic applicant.

> information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being.

*T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.*, 497 F. App'x 158, 160–61 (3d Cir. 2012) (internal quotation marks, alterations, and citations omitted).

For this appeal, the Court's review of legal issues is plenary. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

### B. The ALJ's Decision

The ALJ followed the three-step process. At step one, the ALJ found that J.D. had not engaged in substantial gainful activity. (R. 18.) At step two, the ALJ found that J.D. had the severe impairments of ADHD and adjustment disorder. (R. 18.) At step three, the ALJ found that J.D.'s impairments did not meet, medically equal, or functionally equal the criteria of any listed impairment. (R. 18–28.) That is, the ALJ found that J.D. had a marked limitation in attending and completing tasks but did not have a marked limitation in any other domain.

Regarding the domain of acquiring and using information, the ALJ considered that (1) J.D.'s IQ scores showed a "borderline to low average range of intelligence," (2) evaluations showed low-average skills in reading and a "general level of academic achievements," (3) he had a low-average ability to apply academic skills, and (4) he had performed below grade level in reading and writing but was now performing close to grade level in math. (R. 24.) The ALJ also assigned "great weight" to assessments by state agency psychological consultants finding that J.D. did not have a marked limitation. (R. 22.) The ALJ

concluded that while J.D. had some limitations, they were not marked. (*See* R. 22.)

## III. DISCUSSION

The only issue in this appeal is whether J.D. had a marked limitation in acquiring and using information. (Pl. Brf. at 5.) Amaya argues that IQ scores, other testing, teacher observations, psychological assessments, and academic records all showed such a marked limitation. (*Id.* at 8–12.)

The "acquiring and using information" domain is concerned with how a child thinks and learns. *See* 20 C.F.R. § 416.926a(g)(1)(i)–(ii). The ALJ may consider how a child perceives relationships, reasons, and expresses himself. *Id.* § 416.926a(g)(1)(ii). An adolescent (age 12 to 18) should be able to demonstrate what he has learned in school, apply learned skills to navigate daily living situations without assistance, and comprehend and express simple and complex ideas. *Id.* § 416.926a(g)(2)(v). Examples of limitations in this domain include difficulty in understanding words about space, size, or time; rhyming; recalling things recently learned; solving math problems; or explaining oneself. *Id.* § 416.926a(g)(3)(i)–(v).

A marked limitation means that the child's "impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A "marked" limitation is one which "is 'more than moderate' but 'less than extreme.'" *Id.* The ALJ must consider all relevant evidence, and no single piece of evidence can establish a marked limitation. *Id.* § 416.926a(e)(4)(i), (g)(3).

The ALJ's decision does not require reversal for two key reasons. First, there is no indication that the ALJ ignored any of the evidence relied upon by Amaya on appeal. *Cf. Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence." (citation omitted)). The ALJ explicitly considered J.D.'s IQ scores, other testing, teacher observations, psychological assessments, and academic records. (R.

21–23.) And the ALJ explicitly referenced the IQ scores, other testing, and academic performance when concluding that J.D. did not have a marked limitation in acquiring and using information. (R. 24.) Although Amaya contends that the ALJ erred by not discussing all evidence thoroughly in the functionality section, there was no error, as it is clear that the evidence was considered. *See Jones*, 364 F.3d at 505 (all that is required is "sufficient development of the record and explanation of findings to permit meaningful review"); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004) (reasoning or consideration of evidence may be discerned from elsewhere in the decision).

Second, although the evidence upon which Amaya relies could support a contrary finding, there was substantial evidence to support the finding the ALJ did make—that J.D. did not have a marked limitation in acquiring and using information. As the ALJ explained, the evidence indicated that J.D. had some limitation in acquiring and using information, but testing showed that his ability to apply learned skills was in the low *average* range; that he performed close to grade level in math; and that he showed a "general level of academic achievements." (R. 24.) The ALJ also assigned "great weight" to assessments by state agency psychological consultants, who found that J.D. did not have a marked limitation. (R. 22.) Such consultants "are highly qualified and experts in Social Security disability evaluation," 20 C.F.R. § 416.913a(b)(1), whose "opinions merit significant consideration," *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citation omitted).[4] Given the consultants' assessments and some evidence of academic ability, there was "more than a mere scintilla" of evidence from which to find that J.D.'s impairments did not seriously interfere with his ability to acquire and use information. *Jones*, 364 F.3d at 503.

Amaya's arguments to the contrary are not persuasive. She argues that J.D.'s IQ scores were so low that they almost qualified for a listed impairment,

---

[4] Amaya does not address the state consultants' assessments.

so they must qualify as a marked impairment. (Pl. Brf. at 7–8.) But a single test cannot support a finding of marked limitation, other evidence can outweigh a test score, and the ALJ weighed his IQ scores against such evidence. *See* 20 C.F.R. § 416.926a(e)(4); *see also Watkins v. Comm'r of Soc. Sec.*, 131 F. App'x 362, 365–66 (3d Cir. 2005) (decision on functional limitation was supported by substantial evidence when, despite low percentiles on certain tests, the ALJ relied on other evidence). Further, the Third Circuit has noted, albeit in a non-precedential opinion, that IQ scores in the "low average range" weighed *against* a finding of marked limitation in this domain. *See Phifer ex rel. Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 192 (3d Cir. 2003).

     Amaya also relies on 20 C.F.R. § 416.926a(e)(2)(iii), which provides that a marked limitation can be shown by a test score two standard deviations below the mean "on a comprehensive standardized test designed to measure ability or functioning in that domain." She argues that this regulatory standard is met by the evidence that J.D., when in sixth grade, had a third-grade reading level. (Pl. Brf. at 14–15.) Her reliance is misplaced for two reasons: (1) there is nothing in the regulations to suggest that assessments of reading levels alone qualify as a "comprehensive standardized test"; and (2) the regulation provides that a marked limitation finding also requires that "day-to-day functioning in domain-related activities is consistent with that score." Other evidence credited by the ALJ, as discussed above, showed average or near-average functioning.

     All that said, Amaya does point to evidence of limitations, and a different ALJ could permissibly have read the record more favorably to her claim. Yet "[c]ourts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler*, 667 F.3d at 359. Because there is evidentiary support for the ALJ's decision, I cannot disturb it. *Jones*, 364 F.3d at 503.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is affirmed.

A separate order will issue.

Dated: October 29, 2020

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty
United States District Judge**